13273

STATE *EX REL.* BLACKWOOD, GOVERNOR v. PRIDMORE,
COUNTY SUPERVISOR

(161 S. E., 340.)

*Messrs. Price & Poag, J. D. Lanford* and *Mendel L. Smith,* for appellant,

*Mr. C. Granville Wyche,* for respondent,

November 12, 1931.

The opinion of the Court was delivered by MR. JUSTICE CARTER.

This matter comes before this Court on writ of *certiorari* issued by Hon. T. P. Cothran, Associate Justice, on petition of A. Frank Pridmore involving an order of removal from office issued by the Governor and also an order issued by Hon. T. J. Mauldin, resident Judge of the Thirteenth judicial circuit, who heard the matter on appeal from the Governor's order. For a full statement of the case we adopt the agreed statement of counsel contained in the transcript of record:

"On July 9, 1930, A. Frank Pridmore, Supervisor of Greenville County, shot and killed one Nick Sanders, who was an inspector employed by Dalton and Neves, county engineers, in the work of surface treating certain roads in Greenville County. At the August, 1930, term, Pridmore was indicted for murder and was tried. A mistrial resulted. The case was continued from time to time, but was scheduled for trial at the May, 1931, term of the Court. On April 21, 1931, Governor I. C. Blackwood issued a rule to show

cause directed to the Supervisor, requiring him to show cause why he should not be removed from office *upon the ground that he was guilty of misconduct and persistent neglect of duty in office in seven particulars, which are more fully set forth hereinafter.* (Emphasis ours.)

"The appellant made due return to the rule, and on April 29th the Governor held a hearing in the Supreme Court room in Columbia, at which time evidence was taken and a large number of affidavits filed.

"The Governor withheld his decision until after the trial, which took place on May 11, 1931. On May 15, 1931, the jury, after an all night deliberation, returned a verdict of 'Guilty of manslaughter with recommendation to the mercy of the Court.' Upon this verdict appellant was sentenced by Judge T. J. Mauldin to serve three years at hard labor. An appeal was promptly taken and the appellant was admitted to bail in the sum of $5,000 pending his appeal.

"On May 28, 1931, the Governor passed an order removing Pridmore from office. This order was served on the appellant on May 29th, and on June 1st appellant served on the Governor notice and grounds of appeal to Circuit Judge T. J. Mauldin. Judge Mauldin heard the appeal on June 19th, at which time he permitted additional testimony to be taken, and on the next day, June 20th, he filed his order sustaining Governor Blackwood, and ordered appellant to be removed from office. The appellant applied forthwith to Associate Justice T. P. Cothran for a writ of *certiorari,* who signed the writ on June 20, 1931, ordering the Circuit Judge to certify the entire record to the Supreme Court for hearing at the October, 1931, term of Court.

"On June 22nd it was brought to the attention of the parties that the Supreme Court would hold a special session of the Court on July 13th and the order of Judge Cothran was modified so as to make the matter returnable before the Supreme Court at that time."

The said rule issued by the Governor reads as follows:

"To A. Frank Pridmore, County Supervisor of Greenville County:

"Whereas, it has been brought to my attention, as Governor of the State of South Carolina, that A. Frank Pridmore, County Supervisor of Geenville County, is guilty of misconduct and persistent neglect of duty in office, in the following particulars, to wit:

"1. That the said A. Frank Pridmore, on the 9th day of July, 1930, willfully, unlawfully, and feloniously murdered one Nick Sanders and is now under indictment in the County of Greenville charged with murder.

"2. That the said A. Frank Pridmore, while in the discharge of his duties as County Supervisor, has been under the influence of intoxicating liquor at long intervals and for long periods of time to such an extent as to incapacitate him in the proper performance of his duty.

"3. That the said A. Frank Pridmore, as County Supervisor of Greenville County, has appointed to positions of trust and emolument, under his control and management several persons related and connected with him by consanguinity and affinity, within the sixth degree, in violation of law, to wit: His son, Roy Pridmore; his nephew, Harold Smith; his nephew, Ole Cox.

"4. That the said A. Frank Pridmore, as County Supervisor of Greenville County, has failed to protect the supplies and property of Greenville County, as required by law.

"5. That the said A. Frank Pridmore, as County Supervisor, is using his office and the employees of the County of Greenville, to promote the defense of the charge of murder now pending against him in the Court of General Sessions for Greenville County.

"6. That the said A. Frank Pridmore, as County Supervisor, has refused to receive a number of prisoners delivered to his custody as provided by law, and has failed to require some of said prisoners to serve the sentences imposed upon them by the Court.

"7. That the said A. Frank Pridmore, as County Super-
vison, has failed and refused, and has not the capacity, to
co-operate with the officers and employees of the County of
Greenville and of the State of South Carolina, in the per-
formance and discharge of duties which necessarily require
his co-operation.

"Now, therefore, you, A. Frank Pridmore, County Su-
pervisor of Greenville County, are hereby summoned to
show cause before me, at my office on the 27th day of April,
1931, at 11:00 o'clock a. m., if any cause you have, why
you should not be removed from the office of Supervisor
of Greenville County.

"Herein fail not.

"Given under my hand and the seal of the executive de-
partment, at Columbia, S. C., this 21st day of April, A. D.,
One Thousand Nine Hundred Thirty-one, and in the One
Hundred Fifty-fifth Year of the Independence of the United
States of America.            "I. C. BLACKWOOD,
                    "Governor of South Carolina.
"By the Governor: Charles H. Gerald, Private Secretary."

The said A. Frank Pridmore filed return to the rule as
follows:

"The respondent, A. Frank Pridmore, making return to
the rule to show cause herein, respectfully shows to the
Governor sitting as a Court of inquiry and acting as a Judge
under authority of the Act of March 5th, 1924:

"1st. That he was elected Supervisor of Greenville Coun-
ty after a heated campaign in the summer of 1928, it being
necessary for a third primary to be held before he was
elected; that he defeated one H. P. Dill, who had occupied
the office for eight years, and as a result has had his ad-
ministration opposed at all stages by the friends and rela-
tives of the said H. P. Dill and others.

"2nd. That respondent went into office about January
1st, 1929, and has diligently conducted the affairs of his
office; that he found the machinery and equipment of the

county in a terrible condition, but by bending all his efforts to that end he soon got things in good shape, and as shown by the multitude of affidavits attached hereto has succeeded in doing much work for Greenville County.

"3rd. That on July 9th, 1930, while out on the roads of Greenville County in the official performance of his duties, he became involved in a difficulty with one Nick Sanders, an engineer employed by the County Highway Commission, of which respondent was a member, to supervise the work of surface treating certain roads in Greenville County; that the said Nick Sanders jumped upon the running board of his automobile and rode one hundred feet or more cursing and abusing respondent, and believing that his life was in danger respondent shot the said Nick Sanders; that immediately upon said shooting respondent's political enemies at once set to work to injure him in every way possible, and at once sought his removal at the hands of Governor Richards, who was then Governor of this State. That respondent was brought to trial at the August term, 1930, of the Court of General Session of Greenville County, and there was a mistrial; that before said trial Governor Richards refused to remove respondent, and after said mistrial respondent's enemies again sought his removal, and the Governor again declined to remove the respondent.

"4th. That as far as respondent can ascertain no further effort was made to remove him from office until respondent became involved in a controversy with the Greenville County Delegation because of a tremendous reduction in the appropriation made to respondent's office; that as far as respondent can learn no effort has ever been made by the Delegation of Greenville County to have him removed until this occurrence. Respondent being informed and believes that the preceding Delegation took no action whatsoever along this line, and that the present Delegation, which went into office early in November, 1930, took no action whatsoever against him until the aforesaid controversy came about.

"5th. That the reduction in the appropriation for respondent's office amounted to approximately Eight-three Thousand Dollars; that respondent saw that this reduction in his appropriation would greatly cripple his administration and he made a vigorous protest to the Delegation and a controversy arose. As a result of this, respondent is informed and believes that the Delegation has been constantly after the Governor to remove him from office; that on the 21st day of April, 1931, he received a rule to show cause, issued by the Governor of South Carolina, containing seven specific charges against him; that in the order named the respondent now takes up said charges:

" '(1) That the said A. Frank Pridmore, on the 9th day of July, 1930, willfully, unlawfully and feloniously murdered one Nick Sanders and is now under indictment in the County of Greenville charged with murder.'

"That respondent absolutely denies said allegation in which he is charged with willfully, unlawfully and feloniously murdering the said Nick Sanders, but solemnly and before God swears that he shot the said Nick Sanders in self-defense and believes that if it were not for the unfair atmosphere created by his enemies he would have been acquitted at his previous trial.

" '(2) That the said A. Frank Pridmore, while in the discharge of his duties as County Supervisor, has been under the influence of intoxicating liquor at long intervals and for long periods of time to such an extent as to incapacitate him in the proper performance of his duty.'

"Respondent specifically and positively denies the above charge; that he has lived a sober life in every respect in the last fifteen years, admitting that in his younger days he had at times indulged in drinking, but that for fifteen years he has lived a sober, industrious life, and said charge is an absolute falsehood prepared by his enemies for the purpose of injuring him in his trial.

" '(3) That the said A. Frank Pridmore, as County Supervisor of Greenville County, has appointed to positions of trust and emolument, under his control and management, several persons related and connected with him by consanguinity and affinity, within the sixth degree, in violation of law, to wit: His son, Roy Pridmore; his nephew, Harold Smith; his nephew, Ole Cox.'

"Respondent denies that he is the head of a department of the government, merely being a county officer elected by the people of Greenville County, and admits that his son, Roy Pridmore, has been employed under respondent's directions as mechanic at the county camp; but alleges that he has merely continued the employment of his son, who was a county employee under respondent's predecessor, H. P. Dill, and that his son is competent in every way to discharge those duties, but his work merely amounts to that of a laborer, there being no position created by law or otherwise that his son occupies. Respondent further admits that his two nephews, Harold Smith and Ole Cox, have merely been employed as laborers, one being a tractor driver and the other a truck driver, a mere laboring position, and in so employing his said relatives respondent has done nothing more than has been done in Greenville County from time immemorial.

" '(4) That the said A. Frank Pridmore, as County Supervisor of Greenville County, has failed to protect the supplies and property of Greenville County, as required by law.'

"Respondent specifically denies the above allegation having made it his practice to at all times carefully safeguard and preserve the property of Greenville County.

" '(5) That the said A. Frank Pridmore, as County Supervisor, is using his office and the employees of the County of Greenville, to promote the defense of the charge of murder now pending against him in the Court of General Sessions for Greenville County.'

"The above charge is absolutely without foundation, as respondent has never used his office to promote his defense on the charge of murder; that respondent was elected to the office by the people of Greenville County and that the indictment against him does not in any way involve his competency or his ability to discharge the duties of his office, and that respondent has been carrying on the duties of his office without respect to his trial; that if this charge should be sustained, then it will become the duty of the Governor hereafter to remove from office any State Constable, Sheriff, Deputy Sheriff, or other officer, who, while in office, kills another and is charged with murder.

" '(6) That the said A. Frank Pridmore, as County Supervisor, has refused to receive a number of prisoners delivered to his custody as provided by law, and has failed to require some of said prisoners to serve the sentences imposed upon them by the Court.'

"With reference to the charge of refusing to receive prisoners, as above set forth, respondent alleges that in so doing he was acting under the advice of the County Attorney, and that he was merely exercising the right which he has as Supervisor to receive a prisoner or send him to the State Penitentiary. He alleges that it is an absolute false statement that he has ever failed to require any of the prisoners to serve the sentence imposed upon them by the Court; that as to refusing to take prisoners from cities and towns within the county, respondent alleges that he has been requested to do this by the Delegation representing Greenville County.

" '(7) That the said A. Frank Pridmore, as County Supervisor, has failed and refused, and has not the capacity, to co-operate with the officers and employees of the County of Greenville and of the State of South Carolina, in the performance and discharge of duties which necessarily require his co-operation.'

"Respondent specifically denies this allegation; that he has cheerfully co-operated at all times with the officers of Greenville County, and that the only controversy engaged in by him has been with the Delegation, which is now endeavoring to usurp the executive powers of the Governor and to absolutely control the offices of Greenville County; that it is the duty of the Delegation to legislate and they are now seeking to absolutely dictate to all of the officers of Greenville County; and respondent frankly admits that he has had difficulty with the Delegation; that the Delegation has materially reduced his appropriation for work, which will benefit every farmer and every citizen of Greenville County, on the ground of economy, yet, as respondent is informed and believes on or about April 13th, 1931, the Delegation unanimously voted to appropriate one-half of such sum as may be necessary not exceeding One Hundred Thousand Dollars, for the purchase of a tract of land to give the United States Government as a free site for a veterans' hospital; that respondent is informed and believes, that the other one-half is to be appropriated by the City Council of the City of Greenville; that respondent's controversy with the Delegation was an honest one.

"6th. That respondent is informed and believes that the Delegation has made repeated efforts to get the Governor to act against him, and is informed, but cannot believe the Governor has already promised the Delegation to remove him from office, and that a committee of three men have been appointed by the Governor to select his successor.

"7th. That respondent in informed and believes that the Delegation has employed C. G. Wyche, Esq., as special counsel, to conduct the case against the respondent in this hearing, paying him for his services out of the county funds.

"8th. That respondent now appeals to the Governor of the State to give him a fair hearing; and if respondent's information is correct to refuse to take action in this proceeding upon the ground that the Governor is unable to give him

a fair hearing; that respondent is informed and believes that in this proceeding the Governor is a judicial officer, and no judicial officer can give a man a fair trial when he has already prejudged the case; that it would be impossible for a Judge on a charge against an officer involving his removal from office to give a fair trial when the Judge has already in advance promised to remove him and made arrangements to fill his office.

"9th. That if the above information is not correct respondent asks the Court for permission to prove or disprove the same, when it will indicate to the Governor the persecution which has been heaped upon respondent.

"10th. That respondent, at the March term of General Sessions Court of Greenville County, through his counsel, demanded a trial and was ready for trial, but that the prosecution, without any excuse, continued the same; that it has been generally understood that the case would be tried at the May term of said Court, and respondent has been ready and is now ready for his trial; that respondent charges that this attempt to remove him from office is a direct and deliberate attempt, on the part of his enemies, to prejudice him in the eyes of the jury when his case is called for trial; that he appeals to the Governor of this State to refuse to be a party to such a plan and to dismiss this proceeding without prejudice and without passing upon the facts, so that neither side may be prejudiced hereafter in the trial of this case.

"Wherefore, having made return the respondent prays that the charges against him be dismissed.

"PRICE & POAG,
"M. L. SMITH,
"J. D. LANFORD,
*"Attorneys for Respondent."*

Following the hearing before the Governor, he issued the following order:

"Whereas it appears that A. Frank Pridmore, was under an indictment for homicide, a true bill having been found

against him by the grand jury of Greenville County, and his case pending for re-trial, he, the said Pridmore, having already had one mistrial, and

"Whereas, it further appears that, subsequent to the hearing, of the rule to show cause why Pridmore should not be removed from office, held before me on the 29th day of April, 1931, he was convicted of manslaughter and sentenced by the Presiding Judge in the said case to serve three years at hard labor, and

"Whereas, it further appears that the circumstances preceding and attendant upon the trial of the case, in addition to the circumstances that must continue to obtain in respect to the plight of the said A. Frank Pridmore are such that he will be so incapacitated that he will not be a fit and proper person to discharge the duties of the important office of Supervisor of Greenville County.

"Now, therefore, I, I. C. Blackwood, Governor of South Carolina, by direction and authority contained in Act No. 615, Acts of the General Assembly of 1924, do hereby remove, from the office of Supervisor of Greenville County, the said A. Frank Pridmore.

"Given under my hand and seal of the executive department, at Columbia, this 28th day of May, A. D., One Thousand Nine Hundred and Thirty-one, and in the One Hundred and Fifty-fifth year of the American Independence.

"I. C. BLACKWOOD, *Governor*.

"By the Governor: Charles H. Gerald, Private Secretary."

Thereafter, the said A. Frank Pridmore appealed from the order of removal issued by the Governor to the resident Circuit Judge, the Honorable T. J. Mauldin, and in connection therewith served upon the Governor the following notice:

"To: His Excellency Honorable I. C. Blackwood, Governor of South Carolina at Columbia:

"You will please take notice:

"That A. Frank Pridmore, Supervisor of Greenville

County, hereby appeals to his Honor, Judge T. J. Mauldin, resident Circuit Judge of the 13th Judicial Circuit, from the order of removal from office signed by the Governor at Columbia, South Carolina, on May 28, 1931, and served upon the appellant by registered mail on the morning of May 29, 1931. Greenville County is in the 13th Judicial Circuit and Judge T. J. Mauldin is the proper Circuit Judge to hear said appeal under the terms and provisions of Act No. 615, Acts of the General Assembly of South Carolina of 1924 (Act approved the 5th day of March, 1924—see Acts of 1924, page 997), which said Act is invoked by you in the order aforesaid.

"The ground of the appeal, upon which we will ask the Circuit Judge to reverse the order aforesaid, are as follows:

## "First

"That the Governor is powerless to remove appellant from the office of Supervisor of Greenville County, except under the terms of the Act above referred to, and under the terms of this Act the Governor can only remove an officer of the character of County Supervisor for one or more of three acts, to wit:

"(a) Misconduct in office.

"(b) Persistent neglect of duty in office.

"(c) Persisting in holding office when he has not the capacity to properly discharge the duties of said office.

"That the Governor's order does not embrace any one of the three acts above specified, and said order is therefore a nullity and should be reversed by the Circuit Judge.

## "Second

"That under the terms of the said Act, the Governor can only remove appellant, or any other officer elected by the people to an office of the character of County Supervisor, upon a hearing after notice to said officer in writing, stating

the specific charges brought against him, and giving him an opportunity to be heard.

"That on April 21, 1931, the Governor issued a rule to show cause, directed to the appellant, A. Frank Pridmore, in which appellant was charged with being guilty of misconduct and persistent neglect of duty in office in seven specific particulars." (Here the appellant sets forth the seven grounds for removal stated in the rule issued by the Governor which we have quoted above.)

In this notice the appellant further states:

"That a hearing was held in Columbia in the Supreme Court room on April 29, 1931. At this time the ground embraced in the sixth item above enumerated was withdrawn by C. G. Wyche, Esq., representing the prosecution. The evidence was taken on the other specifications, and voluminous affidavits and evidence were offered by the appellant in reply. That the next day the Governor announced that he would make no decision and would hold the matter in abeyance until after the trial of the appellant.

"That from reading the rule to show cause above set forth, it will appear that the charge against the appellant was that he had been guilty of misconduct and persistent neglect of duty in office in the seven particulars specified.

"That the prosecution completely failed to sustain any of the charges, as will appear by the stenographic report of the hearing. On the contrary, the overwhelming proof before the Govenor was that the appellant was doing splendid work as Supervisor of Greenville County, there being absolutely no contradiction of the sworn statements of many of the leading citizens of Greenville County that he was the best Supervisor Greenville County had known in many years.

"That the ground specified by the Governor in his order of removal is not one of the charges made against the appellant. That upon the ground specified in the order he has never had a hearing and said order of the Governor is there-

fore a nullity and should be reversed and set aside by the Circuit Judge.

### "Third

"That the ground of removal specified by the Governor in his order is as follows:

" 'Whereas, it further appears that the circumstances preceding and attendant upon the trial of the case, in addition to the circumstances that must continue to obtain in respect to the plight of the said A. Frank Pridmore are such that he will be so incapacitated that he will not be a fit and proper person to discharge the duties of the important office of Supervisor of Greenville County.'

"That said ground is entirely different from any set forth in the rule to show cause. The evidence at the hearing completely failed to show that the appellant was guilty of misconduct in office, or that he had been guilty of persistent neglect of duty in office, and said ground of removal is not one of the grounds specified in the Act under which the Governor has proceeded.

### "Fourth

"That a liberal interpretation of the language of the Governor in the order hereinbefore quoted clearly indicates that he is attempting to remove appellant from his office upon the ground that his conviction of manslaughter, and being sentenced under said conviction to serve three years, at hard labor, incapacitates him from discharging the duties of the office to which he has been elected and is now filling. That this ground is utterly untenable for two reasons:

"(a) That this was not one of the grounds set forth in the rule to show cause, and appellant was not given any hearing upon this phase of the matter, although his counsel, on May 20, 1931, wrote the Governor asking for an opportunity to be heard upon this angle of the case, which request was overlooked and the letter not even answered.

"(b) That the conviction of manslaughter, and the sentence thereunder, has not in any way incapacitated appellant from the discharge of the duties of his office, and under the decisions of the Supreme Court of this State, such a conviction does not in the slightest degree disqualify a citizen from citizenship, or from holding office.

## *"Fifth*

"That the Governor erred in holding that a conviction of manslaughter with recommendation to the mercy of the Court, and a sentence of three years thereunder, incapacitates appellant from discharging the duties of the office of Supervisor. That the Act of March 5, 1924, invoked by the Governor, is in the nature of a penal statute and must be strictly construed, and the language in the Act making it a ground for removal—for an officer to 'persist in holding any office to which he has been appointed or elected, the duties of which he has not the capacity to properly discharge'—means incompetency, and the overwhelming proof before the Governor was that the appellant was highly competent as a Supervisor, and a conviction of manslaughter with a sentence of three years, from which the appellant has appealed and is at liberty under bond, in no way incapacitates him and it was error for the Governor to so hold.

## *"Sixth*

"That the Governor erred in holding that the appellant's conviction of manslaughter, with a sentence of three years thereunder, has in any way incapacitated him from discharging the duties of his office. Appellant admits that on May 15th the jury which tried him, after remaining out for sixteen (16) hours, returned a verdict of 'guilty of manslaughter with recommendation to mercy'—the lowest possible verdict that could have been returned against the appellant—and that he was sentenced by Judge T. J. Mauldin

to serve three years on the public works of Greenville County or in the State Penitentiary. That appellant immediately served notice of intention to appeal to the Supreme Court and was at once admitted to bail pending his appeal upon the execution of a bond in the sum of Five Thousand ($5,-000.00) Dollars. That within 30 minutes of the rendition of the verdict and sentence ,appellant was at liberty under bond, and although he had until June 15, 1931 (Thirty days from May 15th) to perfect his appeal, he has already, through his counsel, served his case and exceptions upon the solicitor, and now has a *bona fide* appeal pending to the Supreme Court of South Carolina.

"That promptly upon his release by order of bail, appellant resumed the duties of his office, and has been actively and energetically engaged therein, carrying on all of the vast amount of work of his office without the slightest hitch or interruption of carefully prepared plans already made. That since his conviction, he has continued to discharge the duties of his office with his usual energy, skill and ability, and defies even his most implacable enemy to show where he has in the slightest manner neglected his work or that it has affected his office in the slightest. That until his conviction is sustained by the Supreme Court of this State, and he is thereby deprived of his liberty, he will be able to render the same high class of service to his county, and earnestly and solemnly promises the Court that he will do so.

## "Seventh

"That the ruling of the Governor that his conviction of manslaughter incapacitates appellant from holding his office, is utterly in defiance with the Constitution of South Carolina and the decisions of the Supreme Court of this State, and the Governor erred in so holding. That said conviction in no way affects appellant's citizenship. That appellant is a qualified and registered elector of Greenville County, and Section 2, Article 2, of the Constitution of

South Carolina of 1895 provides: 'Every qualified elector shall be eligible to any office to be voted for, unless disqualified by age, as provided by this constitution.' That the age disqualification referred to, are persons under 21 years of age, and appellant is now 58 years of age. That Section 6 of Article 2 of said Constitution specifies the persons who are disqualified from being registered or voting, namely, persons convicted of certain infamous crimes, which does not include manslaughter, and appellant is not now in any of the enumerated classes. That the Supreme Court of this State, in several interesting decisions, has expressly held that a conviction of manslaughter does not involve moral turpitude and does not in any way disqualify a person from citizenship, and as a citizen not disqualified, appellant is entitled to hold his office until he is disqualified by being imprisoned after, and not before, his conviction is sustained by the highest Court in the land.

### "Eighth

"That the appellant has not been guilty of the slightest misconduct in office. That the Court charge against him, now judicially determined to be that of manslaughter, in no way affected the conduct of his office. That the act in question had no connection with his office. That on July 9, 1930, appellant unfortunately, and without the slightest premeditation on his part, became involved in a personal difficulty with the deceased, Nick Sanders, and shot him as he claimed, and solemnly reaffirms in the presence of God, in self-defense, and as the jury has judicially determined in sudden heat and passion, superinduced by sufficient legal provocation. That the affairs of his office are in excellent condition. That his books and records have been repeatedly audited by expert auditors and supervised by W. H. Willimon, County Comptroller, and appellant has never misused a penny of the funds of Greenville County. That he has taken great pride in his work and has honestly conducted the duties of

his office and challenges any of his enemies to show that he has ever done a dishonest thing in his office, and the killing of Nick Sanders had no connection whatever with his official duties. That as a private citizen, he was defending himself from an attack, accompanied by the use of vile, abusive and insulting language, and the Governor has erred in holding that said matter has in any way incapacitated him from attending to the duties of his high office.

### "Ninth

"That appellant has a *bona fide* appeal pending to the Supreme Court of South Carolina, and until his rights are adjudicated he is entitled to the protection of all his rights guaranteed by the Constitution of South Carolina to a citizen of this State. That he appeals to the Circuit Judge to protect him in the preservation of these rights. That the Governor, after hearing all the evidence brought against the appellant, refused to render any decision until his trial, and there now exists the same reason for not acting until his appeal is heard. That the appellant does not now stand in any 'plight,' but stands as a free citizen of the State of South Carolina until his conviction has been sustained, and the Governor erred in issuing the order of removal until the Supreme Court has declared his appeal fruitless.

### "Tenth

. "That it will be ten days or two weeks before appellant's appeal can be docketed in the Supreme Court, and said appeal, in the regular order of things, cannot be heard until the October (1931) term of said Court. That appellant has had twenty-five (25) years of actual experience in road and bridge building, repairing and maintenance, and the management of county chaingangs, which are the principal personal duties of a County Supervisor. That the office work is largely done by the County Clerk and the business affairs of his office are supervised by the County Comptroller, who

must sign and approve every claim against Greenville County. That the next four months are of vital importance in the road work of Greenville County, this being the time of the year in which most of the work is done. That more work is done during these months than in the entire remaining months of the year. That appellant has projected vast plans for road work during these four months and during this time and until his appeal is heard, appellant can render to Greenville County services of the greatest value. That it would take a new man several weeks to get started, and a change in administration at this time would cost the County of Greenville several thousand dollars. That appellant has a splendid road organization, with his camps stationed at various points in Greenville County, and his removal from office at this time, and the appointment of a new man, would disrupt the entire organization. That the best interest of Greenville County will be subserved by the continuance of appellant in office until his appeal is passed on by the Supreme Court. That appellant assures the Circuit Judge that if the Supreme Court dismisses his appeal he will make no further efforts to set aside his conviction and will promptly surrender himself for the service of his sentence and forthwith vacate his office. That in the meantime, he is a citizen of the State. That his constitutional rights are still preserved inviolate to him; that he has the capacity in every respect to continue the honest discharge of his duties and render to the County of Greenville the same valuable services which he has rendered in the past, and the Governor erred in holding at this time that he is incapacitated from holding said office and the order of removal is null and void and should be set aside by the Circuit Judge.

"Upon these grounds we will ask his Honor, Judge T. J. Mauldin, to reverse the order issued by you as Governor of this State and to set the same aside.

"Upon said appeal we will refer to the stenographic record of the hearing before you and all of the affidavits in behalf

of the appellant and you are hereby requested forthwith to transmit to Judge T. J. Mauldin the entire record in the case.

"Respectfully submitted,

"PRICE & POAG,
"M. L. SMITH,
"J. D. LANFORD,
"*Attorneys for Appellant.*"

Following the hearing before Judge T. J. Mauldin, his Honor issued the following order:

ORDER OF JUDGE T. J. MAULDIN

"This case comes before me upon an appeal from the Order of Governor I. C. Blackwood removing A Frank Pridmore from the office of County Supervisor of Greenville County. The removal herein was transmitted to the undersigned by the Governor, reaching me on Wednesday, the 17th of June, 1931, and pursuant to the provisions of the statute, notice was immediately given to the parties interested or their counsel, and a hearing was set for Friday, June 19, 1931, at 3:00 P. M., and the hearing was then had.

"Accompanying this record is an official letter from the Governor, which I treat as his return to this Court, upon exceptions to his Order herein being filed with him. The return is as follows:

" 'I am herewith transmitting to you the record in the case of the *State v. A. Frank Pridmore,* which includes the testimony, a copy of the indictment, the return and a copy of the verdict and sentence of the Court of General Sessions wherein he was found guilty of and sentenced for manslaughter.

" 'The grounds, as originally set forth, are somewhat numerous and my order is very brief. The grounds relied upon for his removal embrace his conduct while in office,

his incapacity, by virtue of such conduct, and his present status of being under conviction and sentence for homicide. This I deem ample grounds for his removal. There were numerous features revealed in the testimony covering different phases of his conduct in office and reflecting light upon his accusation for homicide. Apart from all of this, in my opinion, the fact that a man has been convicted of manslaughter by a Court of competent jurisdiction sufficiently expresses his conduct and unfitness to justify and demand his removal.'

"Upon the hearing before me counsel for the appellant Pridmore, raised questions as to the constitutionality of the Act of March 5, 1924, which Act is the authority for this proceeding and under which it is brought. Insofar as any question of constitutionality is concerned, it seems that this has been determined by the case of *State ex rel. Richards, Governor v. Ballentine, Sheriff,* reported in 152 S. C., 365, 150 S. E., 46, 66 A. L. R., 574, and I hold in accordance with the holding of the Court *en banc* in that decision, that the Act is constitutional.

"The appellant insists that his conviction in the case tried in the General Sessions Court for Greenville County against him, was not made a ground at the hearing before the Governor and that he has not yet been heard upon that phase and that a conviction of manslaughter is not a legal basis for the Governor's action. Having presided at the trial of his case, I am reasonably familiar with the details thereof. The Governor, upon his hearing, having before him a transcript of the testimony in the first trial of this case, which testimony was substantially repeated at the second trial it is reasonable to conclude that the Governor's convictions were influenced by the same facts that I have in mind at this time with reference to the conduct of the appellant Pridmore. He was indicted and tried upon a charge of murder and this necessarily involves a charge of manslaughter, in such view as the jury may take of the evidence in his

case. It will be noted that in Pridmore's return before the Governor, in the third paragraph thereof, he alleges that 'on July 9th, 1930, while out on the roads of Greenville County in the official performance of his duties, he became involved in a difficulty with one Nick Sanders, an engineer employed by the County Highway Commission, of which respondent was a member, to supervise the work of surface treating certain roads in Greenville County, etc.,' and shot the said Sanders. It is contended that the order of the Governor seeking to reflect his conclusion as a result of the hearing had before him, is not based on any charge referred to in the rule to show cause issued against Pridmore but that the Governor, in acting and giving expression to his conclusions, has brought into the case a cause not directly charged in the rule against Pridmore. A study of the evidence in the case and of the reasons given by the Governor and of the causes enunciated in the statute upon which this character of proceeding may rest, lead to the conclusion that the Governor, in interpreting the law and in his effort to apply the law to this case, has brought himself within the terms of the statute. It may be pertinent to observe here that having tried this case and heard all of the evidence at the second trial at which the defendant Pridmore was convicted of manslaughter, with recommendation to the mercy of the Court, certain impressions were made upon my mind, and upon the conviction when it became my duty under the law, to pass sentence upon Pridmore, having in mind the recommendation to mercy made by the jury and also being fully impressed by the evidence I passed sentence of three years in the penitentiary or upon the chaingang of Greenville County. In this, in an effort to do what I conceived to be real justice in the case, I made this sentence three years, having in mind at the time the serious conviction that there would inevitably follow to Pridmore, as a result of this conviction and sentence, his deposition from office.

"Upon due consideration of the evidence in the case before the Governor upon the rule to show cause and the evidence presented before me, I find that the charges preferred against the Supervisor have been sustained and that he should be removed from office; now, therefore,

"It is ordered, that the appeal from the order of Governor I. C. Blackwood, in this case be and the same is hereby dismissed and the Governor's order affirmed.

"It is further ordered, that A. Frank Pridmore, Supervisor of Greenville County, be and he is hereby removed from the office of County Supervisor of Greenville County and said office declared vacant.

"It is further ordered, that a copy of this order, duly certified by the Clerk of the Court of Common Pleas and General Sessions for Greenville County, be forthwith served upon the said A. Frank Pridmore by the Sheriff of Greenville County and that upon the service of said order, that the said A. F. Pridmore do forthwith vacate the office of County Supervisor of Greenville County.

"It is further ordered, that the State shall have leave to apply to the Court for such further order or orders as may be necessary to carry this judgment into effect.

"T. J. Mauldin, Circuit Judge, 13th Judicial Circuit, presiding in the 13th Circuit, Greenville, S. C.

"June 20, 1931."

The statute under which the Governor acted in this case is No. 615 of the Acts of 1924, approved March 5, 1924 (33 St. at Large, p. 997), and reads as follows:

"An Act to provide for the removal of certain officers.

"Section 1. *Governor May Remove Certain Officers— Appeals.*—Be it enacted by the General Assembly of the State of South Carolina: Any officer, County or State, except the officers whose removal is provided for in Section IV of Article XV of the State Constitution, and the officers guilty of the offense named in Section 22 of Article IV of

the Constitution, who is guilty of misconduct or persistent neglect of duty in office or who persists in holding any office to which he has been appointed or elected, the duties of which he has not the capacity to properly discharge, shall be subject to removal by the Governor of the State upon any of the foregoing causes being made to appear to the satisfaction of the Governor after informing such officer in writing of the specific charges brought against him and giving him an opportunity on reasonable notice to be heard. Provided, That any such officer shall have the right of appeal from any order of removal by the Governor to the resident Circuit Judge unless he be absent from the Circuit at the time of serving the notice of appeal, and in that event to the presiding Judge in that Circuit whether he be within or without the Circuit, which Judge shall hear and determine both as to law and fact upon the record as made before the Governor and upon such additional evidence as he shall see fit to allow. The notice of appeal shall be served upon the Governor, or his Secretary, within five (5) days after the service upon such officer of the order of the Governor removing him, and shall state the grounds thereof and name the Circuit Judge to whom the same is taken and thereupon the Governor shall forthwith transmit to such Judge the record in the case including a copy of the order or removal, grounds of removal, evidence in support thereof and return of service and any other matter which in his judgment may be considered by the Court. Said Circuit Judge shall within Twenty (20) days after the taking of such appeal; and in such shorter time as may be practical, hear and determine the same giving to the parties reasonable notice of the time and place of hearing whose judgment in the matter shall be final. Provided, That such hearing may be had before the Judge to whom the appeal is taken and judgment may be rendered in open Court, or at Chambers within or without the Circuit.

"§ 2. *Power Additional.*—The power and procedure of removal conferred and provided for in this Act are additional to any now authorized by statute.

"§ 3. *Vacancies.*—Any vacancy created under the authority vested by this Act shall be filled as now provided by the Constitution and Statute law of the State relating to the filling of the vacancy in such office.

"§ 4. This Act shall take effect immediately upon its approval by the Governor.

"Approved the 5th day of March, A. D. 1924."

In his petition for a writ of *certiorari* requiring the record in the case to be certified to the Court for review, petitioner states that he desires this Court to pass upon the following questions of law:

"A. That the Circuit Judge erred in not holding that The Act of March 5, 1924, under which the Governor acted, was unconstitutional in that said Act is in violation of the Constitution of South Carolina of 1895, Article 1, Section 5, in that it is a denial of the equal protection of the laws, to-wit:

"Said act provides for a legal procedure for the removal of officers, and constitutes the Governor of the State a judicial tribunal, with the right of an appeal to the Circuit Judge, and then denies an appeal to the Supreme Court of South Carolina, different from any other hearing before a Circuit Judge, the effect being that in all other legal proceedings involving personal or property rights a citizen has a right of appeal to the highest Court in the State but under the terms of this Act, an officer who is removed from office, is denied the right of appeal to the Supreme Court, thereby making it possible for grave questions of law, involving valuable and sacred property rights to be taken from an officer, and to be decided by a Circuit Judge and not by the Supreme Court, and thereby denies to an officer in the class specified by the Act the equal protection of the laws.

"B. That said Act is in violation of Section 14, Article 1, of the Constitution of South Carolina of 1895, which pro-

vides that the three departments of the State government, the legislative, the executive and the judicial, shall forever be separate and distinct, and that no person exercising the functions of one of said departments shall assume or discharge the duties of another department, in that

"(a) said Act creates the Governor a judicial officer and requires him to exercise the functions of another department of government, and

"(b) said Act in effect confers upon the Circuit Judge executive powers, in that it empowers him to set aside and interfere with acts of the Governor.

"That his Honor erred in not declaring said Act unconstitutional upon this ground.

"C. That his Honor, the Circuit Judge, erred in not holding said act to be unconstitutional, in that it was in violation of Article 1, Sections 18 and 25, of the Constitution of South Carolina of 1895, guaranteeing a jury trial to citizens of the State of South Carolina, and said Act permits a citizen who is an officer to be deprived of valuable property rights without a trial by jury.

"D. This his Honor, the Circuit Judge, erred in sustaining the order of Governor Blackwood upon the ground that a conviction of manslaughter and a sentence of three years imprisonment had the effect of incapacitating petitioner from discharging the duties of his office, upon the following grounds:

"(a) Said ground was not one of the charges preferred against your petitioner in the hearing before the Governor.

"(b) The act in question provides for a hearing before an officer can be removed, and upon the question of capacity or incapacity your petitioner was never given a hearing!

"(c) Such a finding by both Governor and Circuit Judge is entirely without any foundation in fact, the only evidence before the Court being that the petitioner was not incapacitated from performing the duties of his office.

"E. That both the Governor and Circuit Judge erred in holding that a conviction of manslaughter, while an appeal was pending in the Supreme Court, in any way affected the capacity of the petitioner, or that it was ground under the Act for removing petitioner from his office while his appeal was so pending.

"F. That it was error of law for the Circuit Judge to in any way supplement the order of the Governor. That it is the duty of the Circuit Judge to decide an appeal whether or not the Governor committed an error of law or fact, and it was error for the Circuit Judge to in any way consider a letter of the Governor transmitting the record."

As to the question raised regarding the constitutionality of the Act (No. 615 of the Acts of 1924, above quoted) under which the Governor acted in removing the petitioner from office, we deem it sufficient to state that that question was fully considered by the Court, sitting *en banc*, in the case of *State ex rel. Richards, Governor v. Ballentine*, 152 S. C., 365, 150 S. E., 46, 66 A. L. R., 574, and decided against appellant's contention, holding that the Act is constitutional. At the hearing before this Court permission was requested, by counsel for appellant, to review the decision in the *Ballentine case*, but the request was denied.

Under the second question raised and urged by petitioner before this Court, he takes the position that a conviction of manslaughter and a sentence of three years' imprisonment cannot have the effect of incapacitating him from discharging the duties of his office, and contends that the order of removal by the Governor was erroneous and illegal, as well as the order issued by his Honor, Judge Mauldin, who heard the matter on appeal from the Governor's order, one of his contentions being that the conviction of manslaughter was not one of the charges preferred against him, and also contends that upon the question of capacity or incapacity he has not been given a hearing.

The Act of the Legislature involved in this case provides for removal from office by the Governor of any officer named in the Act "who is guilty of misconduct or persistent neglect of duty in office or who persists in holding any office to which he has been appointed or elected, the duties of which he has not the capacity to properly discharge." In the rule issued by the Governor, the petitioner is charged with being guilty of misconduct and persistent neglect of duty in office in the several particulars set forth in the rule, only five of which, that is, Nos. 1, 2, 4, 5, and 7, it appears, were considered. We consider it unnecessary to discuss the meaning of the term "misconduct in office." The words are too simple and too well understood to need any explanation. In Webster's New International Dictionary, we find the following definition of the word "misconduct": "Mismanagement, * * * wrong or improper conduct, bad behavior, unlawful behavior or conduct, malfeasance, a case or instance of bad behavior, a misdeed." The charge of murder certainly carries with it a charge of misconduct, and an indictment for murder embraces the lesser charge of manslaughter, for which the petitioner was convicted and duly sentenced. Because one convicted of manslaughter is not prohibited from exercising certain rights as a citizen is no reason why he should be kept in office if he is guilty of misconduct in office which renders him unsuitable for performing the duties of such office. Not only was the indictment charging the petitioner with murder before the Governor, which charge also embraced the lesser charge of manslaughter, but also the testimony taken at the trial, which included the testimony of the petitioner and his witnesses as to the manner in which the homicide occurred. It is true, at the time the rule was issued by the Governor and at the time of the hearing before the Governor, the petitioner had not been convicted—the first trial having resulted in a mistrial and at the second trial he was convicted of manslaughter and sentenced for a period of three years. The Governor did

not issue the order of removal until after the second trial of the petitioner and until the conviction of the petitioner was officially reported to him. But, as stated above, the Governor had before him at the time the testimony taken at the first trial, which included the testimony of the defendant and his witnesses, giving the defendant's version of how the homicide occurred. The Governor, therefore, had full opportunity to consider the conduct of the petitioner in connection with the homicide with which he was charged. In this connection we call attention to the fact that the petitioner claimed to be in the discharge of his duties at the time he shot and killed the deceased. The Governor, therefore, had full opportunity to judge the petitioner's conduct, and, we may add, the conclusion reached by the Governor and the order of removal issued by him is supported by the record.

In this connection it may be stated that, from his conviction of manslaughter and sentence by the Court, the defendant appealed to this Court, and, at the time the order of removal by the Governor was issued, and the subsequent affirmance by the Circuit Judge, the said appeal was pending. Since that time the said appeal was heard by this Court, resulting in an affirmance of the defendant's conviction and sentence in the lower Court.

By reference to the Governor's order of removal, it will be seen that the Governor did not base his finding upon the conviction of manslaughter alone, but, as he stated, based the same also upon "the circumstances preceding and attendant upon the trial of the case, in addition to the circumstances that must continue to obtain in respect to the plight of the said A. Frank Pridmore." In the Governor's return to the Circuit Court, he makes clear some of the matters before him by use of the following language: "The grounds, as originally set forth, are somewhat numerous and my order is very brief. The grounds relied upon for his removal embrace his conduct while in office, his incapacity, by virtue of such conduct, and his present status of being under conviction and sentence for homicide."

It is clear, therefore, that the Governor considered the entire record before him, including all of the testimony, and the Circuit Judge considered the entire record.

Petitioner contends that he was not given a hearing on the question of capacity or incapacity to remain in office, contending that the only testimony bearing on this question was testimony which he offered at the hearing before his Honor, Judge Mauldin, and which, according to petitioner's contention, established that he was not incapacitated from performing the duties of his office. In answer to this position, we deem it sufficient to state that Judge Mauldin heard the matter upon all of the testimony adduced at the trial of the defendant under the indictment referred to and upon the testimony taken before the Governor, the affidavits introduced at that hearing as well as the testimony offered by petitioner before his Honor, and, in fact, upon the entire record in the case.

We have not quoted or undertaken to discuss the testimony on the several questions raised, for the reason that in our opinion it would serve no useful purpose, but we state that, according to our view, the record supports the order issued by Governor as well as the order issued by his Honor, Judge Mauldin. We desire to further state that, while we have made no mention of some of the questions raised by petitioner, we have duly considered the same, and have reached the conclusion that the errors alleged cannot be sustained.

It is therefore the judgment of this Court that the order and judgment of the Circuit Judge be, and the same is hereby, affirmed.

Mr. Chief Justice Blease and Messrs. Justices Stabler and Bonham concur.

Mr. Justice Cothran (dissenting): This is a proceeding by *certiorari,* instituted by the appellant Pridmore, Supervisor of Greenville County, for the purpose of a review by this Court of an order of his Honor Judge Mauldin.

dismissing the appeal of Pridmore from the order of his Excellency, the Governor, removing him from the office of Supervisor.

The appellant asked that this Court review the decision in the case of *State ex rel. Richards v. Ballentine,* 152 S. C., 365, 150 S. E., 46, 66 A. L. R., 574, which sustained the constitutionality of the Act of 1924, 33 Stat., 997. The application, upon the hearing, was reserved by the Court for disposition in connection with the decision upon the merits of the *certiorari* proceeding. Permission to review that case has been denied.

My opinion is that the Act of 1924 is so clearly unconstitutional that the permission should have been granted and that the *Ballentine case* should be overruled and the Act declared unconstitutional. I do not propose to add anything, in support of this conviction, to what is contained in my dissenting opinion in the *Ballentine case.*

I do not think that the fact that the Court has declined to review the *Ballentine case* negatives the fact that in this appeal "there is involved a question of constitutional law"; that might be a good reason for sustaining the constitutionality of the Act of 1924, but it does not prove that the question is not involved in this appeal; it was raised by appellant and discussed in the brief; the fact that it may be decided upon the strength of the *Ballentine case* is conclusive proof that it was raised; it had to be raised before it could be decided.

Upon the merits of the case, there are at least two errors in the proceeding which require a reversal of the decree of Judge Mauldin and a reversal of the removal order of the Governor:

(1) The order of the Governor is based solely upon the conviction of the appellant of the offense of manslaughter which is not, under the circumstances, a valid ground of removal, a position which the Circuit Judge erred in not sustaining.

(2) The order of the Governor being thus circumscribed, the Circuit Judge was in error in sustaining it upon other grounds.

I. A review of the proceedings culminating in the order of the Governor appears necessary in disposing of this suggested error.

On April 21, 1931, the Governor issued a rule requiring the appellant, Pridmore, to show cause before him why he should not be removed from office upon the ground that he had been guilty of misconduct in office and persistent neglect of his official duties; the general charges stated were sought to be sustained upon seven specifications which are detailed in the opinion of Mr. Justice Carter submitted herein; one of these specifications, to which particular attention is directed, was as follows: "That the said A. Frank Pridmore, on the 9th day of July, 1930, wilfully, unlawfully and feloniously murdered one Nick Sanders and is now under indictment in the County of Greenville charged with murder."

The appellant made due return to the rule, and on April 29, 1931, a hearing was had before the Governor, at which oral evidence and affidavits on both sides, going fully into the charges and defenses, were submitted.

It having been brought to the attention of the Governor that the appellant was to be tried upon the charge of murder after a mistrial in August, 1930, at the ensuing May term of Court, the Governor very properly withheld his decision (doubtless for the reason that his action might prejudice the interests of the appellant upon the second trial), until after the trial had been had. The trial was entered into on May 11th, and on May 15th the jury rendered a verdict of manslaughter, with recommendation to mercy, upon which the defendant was sentenced to three years' imprisonment at hard labor. From this judgment the defendant appealed to this Court, and was admitted to bail in the sum of $5,-000.

Without further hearing or notice to the appellant, the Governor on May 28th passed an order of removal, which, due to its great significance in this review, is reproduced here:

"Whereas, it appears that A. Frank Pridmore, was under an indictment for homicide, a true bill having been found against him by the Grand Jury of Greenville County, and his case pending for retrial, he, the said Pridmore, having already had one mistrial, and

"Whereas, it further appears that,.subsequent to the hearing, of the Rule to Show Cause why Pridmore should not be removed from office, held before me on the twenty-ninth day of April, 1931, he was convicted of manslaughter and sentenced by the presiding Judge in the said case to serve three years at hard labor, and

"Whereas, it further appears that the circumstances preceding and attendant upon the trial of the case, in addition to the circumstances that must continue to obtain in respect to the plight of the said A. Frank Pridmore are such that he will be so incapacitated that he will not be a fit and proper person to discharge the duties of the important office of Supervisor of Greenville County,

"Now, therefore, I, I. C. Blackwood, Governor of South Carolina, by direction and authority contained in Act No. 615, Acts of the General Assembly of 1924, do hereby remove, from the Office of Supervisor of Greenville County, the said A. Frank Pridmore.

"Given under my hand and the seal of the Executive Department,· at Columbia, this twenty-eighth day of May, A. D., One Thousand Nine Hundred and Thirty-one, and in the One Hundred and Fifty-fifth year of the American Independence."

From this order of removal the officer duly perfected an appeal under the Act of 1924 to the Circuit Judge, Hon. T. J. Mauldin, upon exceptions detailed in the opinion submitted by Mr. Justice Carter. On June 19th the appeal was

heard by him, and on the 20th he filed an order sustaining the order of the Governor and directing the removal of the appellant. From that order the officer has applied for relief under *certiorari* proceedings.

A simple reading of the order of the Governor demonstrates, I think, beyond a doubt, that he based it solely upon the conviction of Pridmore of manslaughter and the three years' sentence. After noting the fact of his conviction and sentence, the order continues: "Whereas, it further appears that the circumstances preceding and attendant upon the trial of the case, in addition to the circumstances that must continue to obtain in respect to the plight of the said A. Frank Pridmore are such that he will be so incapacitated that he will not be a fit and proper person to discharge the duties of the important office of Supervisor of Greenville County."

One is left entirely to conjecture what circumstances were referred to, certainly not the charges of misconduct not connected with the trial. It appears that at the hearing before Judge Mauldin a letter, attached to the record, signed by the Governor, was used by the Circuit Judge as ground for holding that the Governor's order was based upon some other ground than the conviction of manslaughter. I do not think that it was any part of the record which must stand or fall by the order and not by a postscript. Even in this communication the Governor makes no specific findings upon the charges contained in his rule to show cause, but evinces clearly the gravamen of Pridmore's offense as follows: "Apart from all of this, in my opinion, the fact that a man has been convicted of manslaughter by a Court of competent jurisdiction sufficiently expresses his conduct and unfitness to justify and demand his removal."

It does not appear that the Governor entered upon a decision that in the circumstances of the homicide Pridmore was guilty of murder or manslaughter. I doubt very much, in view of the fact that the law has provided another trib-

unal for the determination of his guilt or innocence, whether the Governor would be authorized to pass upon this issue, by reason of the necessarily prejudicial effect of an adverse decision upon the trial of the defendant. In his order he simply adopts the finding of the jury that Pridmore was guilty of manslaughter, and, regardless of the fact that he has appealed from that judgment, which appeal was then pending, he held that it was sufficient ground of his removal.

II. The Act of 1924 provides for an appeal to the Circuit Judge from the order of removal of the Governor; that means, as I understand it, an appeal bringing in question the correctness of the findings of the Governor upon the charges preferred; it does not open the door as to charges upon which the Governor has not passed. The order of the Circuit Judge is not clear whether he intended to sustain the charges which were not passed upon by the Governor; but he does say: "Upon due consideration of the evidence in the case before the Governor upon the Rule to Show Cause and the evidence presented before me, I find that the charges preferred against the Supervisor have been sustained and that he should be removed from office." From this it may be inferred that he intended to sustain all of the charges, regardless of whether the Governor passed upon them or not; this I do not think he had authority to do.

It is true that the Act of 1924 provides that the Circuit Judge shall hear and determine the appeal, both as to law and fact upon the record as made before the Governor and upon such additional evidence as he shall see fit to allow. This manifestly permits him to receive additional evidence, in his discretion, upon the issues heard and determined by the Governor.

For these reasons, I think that the decree of Judge Mauldin should be reversed, which would result in sustaining the appeal from the order of the Governor and a dismissal of the proceedings seeking his (Pridmore's) re-

moval, leaving the State to pursue the course under the Constitution and Statutes other than the Act of 1924.